UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LeCHASE CONSTRUCTION SERVICES,
LLC,

                    Plaintiff,                    **DECISION AND ORDER**

            v.                           6:20-CV-06915 EAW

ARGONAUT INSURANCE COMPANY,

                    Defendant.
_____

## I.    <u>INTRODUCTION</u>

Pending before the Court is a motion for summary judgment filed by defendant Argonaut Insurance Company ("Defendant"). (Dkt. 25). Because material issues of fact prevent resolution of this case as a matter of law at this pre-answer stage of the proceedings, the motion is denied.

## II.    <u>BACKGROUND</u>

This matter arises from a construction project in Dover, New York, known as the Cricket Valley Energy Administration and MCE Building Project ("the Project"). (*See* Dkt. 1-1 at 9, ¶ 4; Dkt. 25-12 at ¶ 1). Plaintiff LeChase Construction Services, LLC ("Plaintiff") performed work on the Project. (Dkt. 25-12 at ¶ 1; Dkt. 26-19 at ¶ 1).

On June 8, 2017, Plaintiff entered into a subcontract with United Structures of America, Inc. ("USA") to provide structural steel design and fabrication for the Project. (Dkt. 25-12 at ¶ 2; Dkt. 26-19 at ¶ 2). USA's original contract amount with Plaintiff was $3,874,383. (Dkt. 25-12 at ¶ 3; Dkt. 26-19 at ¶ 3). USA as principal executed a Supply

Bond ("the Bond") with Defendant as surety in the amount of $3,874,383.  (Dkt. 25-12 at

¶ 4; Dkt. 26-19 at ¶ 4; *see* Dkt. 25-9).  The Bond was issued to and accepted by Plaintiff,

as obligee.  (Dkt. 25-12 at ¶ 5; Dkt. 26-19 at ¶ 5).  The Bond states, in relevant part, as

follows:

> [A]ny suit by [Plaintiff] under this bond must be instituted before . . . the
> earlier of: (a) the expiration of one year from the date [USA] was obligated
> under the Material Contract to deliver the materials to [Plaintiff], or (b) *the*
> *expiration of one year from the date any other default by [USA] under the*
> *Material Contract*.

(Dkt. 25-9 at 1 (emphasis added)).  Plaintiff filed its complaint on July 20, 2020, in New

York State Supreme Court, Monroe County.  (Dkt. 1-1 at 11).  The crux of the dispute on

the pending motion is whether USA defaulted prior to July 20, 2019, because if so and if

no exception applies, the claim would be untimely.

On September 18, 2019, Plaintiff issued Purchase Change Order No. 18 ("Change

Order 18") that reduced USA's contract balance by $144,000, which according to Plaintiff

accounted for the removal of site supervision from USA's scope of work and still resulted

in a positive value on USA's subcontract.  (Dkt. 25-12 at ¶ 8; Dkt.  26-19 at ¶ 8).  The

description on Change Order 18 stated:  "Additional LCS Costs due to *USA Breach of*

*Contract*.  Costs Include Added LeChase General Conditions to manage *USA abandonment*

*of the work*, additional fabrication issues that have been discovered."  (Dkt. 25-10 at 1

(emphasis added)).  A spreadsheet attached to Change Order 18 details additional costs

incurred by Plaintiff commencing on July 2, 2018.  (*Id*. at 2; *see also id*. at 9).

Defendant contends that Plaintiff submitted a formal claim on the Bond on

November 1, 2019 (Dkt. 25-12 at ¶ 13), but Plaintiff denies that this correspondence was a

formal claim—instead arguing that it submitted costs to Defendant on that date in the amount of $431,421.68 relating to costs it had incurred as a result of USA's default, and that it first notified Defendant of issues relating to USA's performance on the Project on September 5, 2019 (Dkt. 26-19 at ¶ 13).  Plaintiff contends that its claim on the Bond is "limited to USA's default for failing to indemnify and make [Plaintiff] whole for the costs outlined in the letter dated October 28, 2019."  (*Id.* at ¶ 14).

By letter dated February 12, 2020, Plaintiff wrote to Defendant outlining that its total claim against the Bond was $2,232,212.68, plus interest and attorneys' fees.  (Dkt. 25-11).  In that letter, Plaintiff states, among other things, that its costs underlying the Bond are tied, in part, to Change Order 18, which "contains certain additional labor costs attributable to the significant increase in the amount of time required by [Plaintiff's] field management staff to manage fabrication errors, incomplete or inaccurate deliveries, and other problems with orders, materials, and related safety issues caused by USA."  (*Id.* at 1).  Plaintiff further states that these issues and its costs "were exacerbated by USA's refusal to come to the jobsite and manage these issues itself."  (*Id.*).  This necessitated, according to Plaintiff, its assignment of an additional superintendent to the Project (whose spreadsheet of time is attached to Change Order 18, reflecting the time commencing on July 2, 2018).  (*Id.* at 1-2).

Defendant contends that it denied Plaintiff's claim on the Bond, in part, on the basis that the claim was untimely because the action was not filed within one year of USA's default.  (*See* Dkt. 25-13 at 7).  After commencement of this action, the case was removed

to this Court on October 30, 2020, on the basis for diversity jurisdiction.  (Dkt. 1).[1]  After removal, the Court granted Plaintiff's motion to remand and denied Defendant's summary judgment motion as moot.  (Dkt. 15).  The Second Circuit Court of Appeals vacated the Court's remand order and sent the case back for further proceedings.  (Dkt. 19).

After conferring with the parties, a briefing schedule was set for the filing of Defendant's renewed motion for summary judgment.  (Dkt. 22; Dkt. 24).  Defendant filed its summary judgment motion on June 30, 2023.  (Dkt. 25).  Plaintiff responded in opposition on July 28, 2023.  (Dkt. 26).  Defendant filed a reply memorandum in further support of its motion on August 18, 2023.  (Dkt. 27).  Oral argument was held before the undersigned on November 28, 2023, at which time the Court reserved decision.  (Dkt. 31).

After oral argument, Plaintiff submitted without leave further papers in opposition to the motion for summary judgment.  (Dkt. 32).  Defendant filed a letter objecting to the untimely filing (Dkt. 34), and Plaintiff submitted a response (Dkt. 35).  Because Plaintiff failed to request leave before making its additional submissions, and even now only seeks leave as an afterthought in a letter filed in response to Defendant's objections, *see* W.D.N.Y. Loc. R. Civ. P. 6(a)(6) ("Absent permission of the Judge hearing the motion, sur-reply papers are not permitted."), the Court will not consider the post-argument submissions.

---

[1]     Although it took repeated efforts by Plaintiff to comply with the Court's directions that it file further information concerning the citizenship of its members (*see* Dkt. 31; Dkt. 33; Dkt. 36; Dkt. 37; Dkt. 38; Dkt. 39), it finally complied with the Court's requests and the Court agrees that the parties' citizenship is diverse.

III.   <u>**DISCUSSION**</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*."  *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The obligations of a surety such as Defendant "are limited to those it undertakes in its bond and that the bond attaches to the principal contract and must be construed in conjunction therewith. . . ."  *Annuity, Pension, Welfare & Appretinceship Skill Improvement & Safety Funds of Intl Union of Operating Engineers v. Colonial Sur. Co.*, No. 11-CV-00178 NSR, 2014 WL 4493803, at *3 (S.D.N.Y. Sept. 11, 2014) (quoting *Varlotta Constr. Corp v. Sette-Juliano Constr. Corp.*, 234 A.D.2d 183, 183 (1st Dep't

1996)).[2]  "Courts 'look to standard principles of contract interpretation to determine the rights and obligations of a surety under a bond.'"  *Nobel Ins. Co. v. City of New York*, No. 00-CV-1328 KMK, 2006 WL 2848121, at *9 (S.D.N.Y. Sept. 29, 2006) (quoting *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 51 (2d Cir. 2004)).  "New York courts construe bonds like any other contract in order to determine the parties' rights and obligations thereunder. . . .  However, to the extent that provisions of a surety bond issued by a compensated surety are ambiguous, courts construe them against the surety."  *Shawnlee Const., LLC v. J.K. Scanlan Co.*, 42 F. Supp. 3d 561, 570 (S.D.N.Y. 2014).  *See U.S. Fid. & Guar.*, 369 F.3d at 74 ("And, as we have noted in previous cases, '[u]nder New York law, it is well established that "[a] compensated, corporate surety . . . is not a favorite of the law and its contract of suretyship will be construed in a manner most favorable to [the] claimant."'" (quoting *Cam-Ful Indus., Inc. v. Fid. & Deposit Co. of Maryland*, 922 F.2d 156, 163 (2d Cir. 1991))).

The record here establishes by Plaintiff's own admissions that more than one year prior to commencement of this action, it viewed USA to be in breach of contract.  That fact cannot be reasonably disputed.  (*See*, *e.g.*, Dkt. 25-10 at 1 (Change Order 18 wherein Plaintiff states that USA breached the contract)).  But the Bond requires the timely commencement of an action within one year of a "default" by USA, not necessarily a "breach."

---

[2]     As confirmed at oral argument, the parties agree that New York law applies. "[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry."  *Texaco A/S (Denmark) v. Com. Ins. Co. of Newark, NJ*, 160 F.3d 124, 128 (2d Cir. 1998).

The term "default" is not defined in the Bond or the underlying contractual documents.  *Cf.* *E & T Skyline Constr., LLC v. Talisman Cas. Ins. Co., LLC,* No. 19-CV-8069 (JSR), 2023 WL 7297212, at *7 (S.D.N.Y. Nov. 6, 2023) ("Bond Agreement defined . . . default to include a failure 'to perform and complete or comply with the other material terms of the' subcontract.").  As the court recognized in *Elm Haven Const. Ltd. P'ship v. Neri Const.*, LLC, 281 F. Supp. 2d 406, 412 (D. Conn. 2003), *aff'd*, 376 F.3d 96 (2d Cir. 2004), the word "default" has a distinct meaning in the context of construction suretyship law, and "[n]ot every breach of a construction contract constitutes a default. . . ." (quoting *L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 110 (5th Cir. 1994)).[3]  The *Elm Haven* court went on to explain:  "A legal default requires a material breach or series of material breaches such that the obligee is justified in terminating the contract. . . .  Thus, there is a distinction in the concepts of 'breach' and 'default' that is to be recognized in construction suretyship law."  *Id*. at 412-13 (citations omitted).

In view of this, summary judgment must be denied based on the present record.  In other words, while the record establishes that USA breached the contract more than a year

---

[3]    While the *Elm Haven* court was applying Connecticut law, courts applying New York law have considered the same case law in assessing whether a contractual "default" has occurred.  *See, e.g., 120 Greenwich Dev. Assocs., LLC v. Reliance Ins. Co.*, No. 01 CIV.8219(PKL), 2004 WL 1277998, at *12 (S.D.N.Y. June 8, 2004) (citing *L & A Contracting* for the proposition that "a clear declaration of default is a necessary precondition to invoking the surety's obligations where bond required surety to remedy principal's breach '[w]henever Principal shall be, and shall be declared by Obligee to be in default under the subcontract, the Obligee having performed the Obligee's obligations thereunder'"); *see also Int'l Fid. Ins. Co. v. Cnty. of Rockland*, 98 F. Supp. 2d 400, 437 (S.D.N.Y. 2000) ("not every breach justifies a declaration of default and termination of the contract" (citation omitted)).

prior to Plaintiff's commencement of this action, it cannot be said that there is no dispute that USA was in default under the terms of the contract at that point.  Especially where the term default is not defined in the Bond and any ambiguous terms are construed against Defendant as the surety, it would be inappropriate to resolve the case as a matter of law at this stage of the litigation.  Because of that, the Court need not and does not reach the other issues raised by the parties that would only be relevant in the event it was undisputed that a default occurred by USA more than one year prior to commencement of the action.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied. (Dkt. 25).

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

DATED:    February 12, 2024
            Rochester, New York